SETH BURROUGHS *v.* WALTER WRIGHT, MOSES KITTREDGE AND
JAMES RAMSAY.

[Same Case, 16 Vt. 619.]

Where property has been attached by one officer, and is in his custody, a return by another officer, who also holds a writ of attachment against the owner of the property, that he has attached the same property, subject to the first attachment,—still leaving the property in the possession of the first attaching officer,—will create no lien upon the property; and it makes no difference, that the officer making the first attachment was one of the plaintiffs in the second writ, and so could not serve it,—nor that it was at the time agreed between the two officers, that the writ held by the second officer should stand in any particular order of priority.

An attachment cannot exist without custody, or possession, either by the officer, or by his servant.

Where an officer attaches personal property upon three writs of attachment, and at the same time levies an execution upon the same property, subject to the attachment upon the three writs, and takes the property into his possession, and the executions obtained upon the three writs first served are placed in the hands of another officer, leaving the fourth execution in the hands of the first officer, this gives such other officer no right to take the property from the possession of the first officer.

And it makes no difference, in such case, that the second officer, upon receiving the executions, demanded the property of the first officer, and he consented that it might be taken, if such consent were in fact revoked, before it was acted upon by the second officer.

And if, after such consent is revoked, the second officer take the property into his possession, he has no right to retain it, as against the first officer; and the first officer will not become a trespasser by retaking the property, to be disposed of upon the execution still retained by him;—nor will he become a trespasser, as to the second officer, by any subsequent irregularity in his proceedings upon that execution.

If an execution debtor consent that his property may be sold upon the execution without advertisement, the sale is valid, and is so far an official sale, that the officer's return upon the execution is *prima facie* evidence in favor of the officer and of those who acted under him.

TRESPASS for taking certain personal property, described in the plaintiff's declaration. Plea, the general issue, with notice of special matter of defence, and trial by jury, December Term, 1844,—REDFIELD, J., presiding.

On trial the following facts appeared. The defendant Wright, who was a deputy sheriff, held four writs of attachment against the defendant Ramsay, in favor of Jacob C. Bean, John Bacon, John Kelly & Co. and the Farmer's & Mechanics' Co.,—the three first of which were placed in his hands for service, and the fourth he held but could not serve, for the reason that he was one of the company who were plaintiffs. Wright went to Ramsay's on the 10th of April, 1843, taking one French with him, for the purpose of making an attachment, and sent for the plaintiff, who was constable, to come and serve the writ in favor of the Farmers' & Mechanics' Co., and said to French, that he should wait, until Burroughs came to serve that writ, before he proceeded to make any attachment. The plaintiff came and took the writ in favor of the Farmers' & Mechanics' Co., and it was agreed that he should wait and attach a horse and sleigh, with which Ramsay, who was then absent, was expected soon to return. Wright then proceeded to attach the property, and was making his return, when the defendant Kittredge came and put into Wright's hands, for service, an execution in his favor against Ramsay for $919,05. Ramsay returned without the horse and sleigh, and it was then arranged between Wright and the plaintiff, that the plaintiff should return, as attached upon the writ in favor of the Farmers' and Mechanics' Co., the same property which Wright returned upon the other writs and the execution in favor of Kittredge, and that the writ in favor of Bean should be the first in order of pri-

ority, the writ in favor of the Farmers' & Mechanics' Co.. the second, the other two writs next, and then the execution in favor of Kittredge. A part of the property attached was left in the possession of French, and the remainder in that of Kittredge.

Judgments were duly obtained, on the 21st of April, 1843, in the actions upon which these writs issued, and the executions were placed in the hands of the plaintiff for collection, and he demanded the property of Wright on the 22d of April, 1843. Wright consented that he might take the property, and the plaintiff went and examined it, but did not take it into his possession. The plaintiff then advertised the property to be sold the 6th day of May, 1843, at one o'clock in the afternoon, upon the four executions in his hands. On the same day Wright advertised the same property to be sold upon Kittredge's execution, on the same 6th of May, at ten o'clock in the forenoon, and the plaintiff, having learned this, and that Wright intended to hold on upon the property by virtue of Kittredge's execution, on the same day, by direction of the creditors, or some of them, took down his advertisement and advertised the property to be sold May 6, 1843, at nine o'clock in the forenoon. After this, and on the same day, the plaintiff took the property into his possession.

On the fifth day of May, 1843, Ramsay wrote upon Kittredge's execution a request to Wright to sell the property on that execution, and thereby agreed to take no advantage of him for not advertising it according to law ; and on the same day the defendants took the property, and Wright sold it upon Kittredge's execution. The judgments in favor of Jacob C. Bean, John Bacon and John Kelly & Co. against Ramsay amounted in the whole to $47,50 ; and Wright returned, upon Kittredge's execution, that he tendered that amount, and all legal fees upon the three executions, to the plaintiff, and that he still held the same, the plaintiff having refused to receive it, and that he had paid the balance of the avails of the property, being $103,23, to Kittredge.

The plaintiff objected, that Wright's return upon Kittredge's execution was not competent evidence to prove the facts therein stated ; but the court overruled the objection.

The court intimated, that they should charge the jury, that, if the first attachment was made by Wright, and he was to be considered as having the custody of the property until the time of the demand

made by the plaintiff,—which seemed to be implied from the returns on all the processes, and from the demand itself,—his assenting, at that time, that the plaintiff should take possession would not change the rights of the parties, until the plaintiff had actually taken possession under such permission ; that, if the plaintiff, before that was done, became aware of Wright's intention not to surrender the possession, and to sell upon Kittredge's execution, and he then went and took possession of the property, he would be in no better condition, than if Wright had never given any such consent; that, considering the case aside from any surrender of possession by Wright, if he made the first attachment, and retained the possession of the property, the return of the attachment by the plaintiff upon the writ in favor of the Farmers' & Mechanics' Co. could not create any lien in their favor, as against Wright, or the creditors in the precepts in Wright's hands ; that until all those precepts were withdrawn, or satisfied, Wright was not obliged to surrender his possession, and the plaintiff was not justified in taking the property out of his possession, until Kittredge's execution was satisfied ; and that, after it was so taken, Wright might lawfully retake the property and sell it upon Kittredge's execution, in the manner returned thereon, and apply thereon the entire avails of the sale, unless the creditors in the other executions, besides the one in favor of the Farmers' & Mechanics' Co., perfected their lien by putting their executions into Wright's hands.

The plaintiff submitted to a verdict for the defendant, with leave to except.

*T. Bartlett* for plaintiff.

The proposition, that the Farmers' & Mechanics' Co., to create or preserve a lien upon the property, should have put their writ into Wright's hands is effectually answered by the fact, which now appears in the case, that Wright was one of the plaintiffs in that suit.

The plaintiff contends, that in point of fact the attachments were simultaneous. It does not appear, that Wright claimed to have the control and possession, as against the plaintiff, until after he levied his executions and removed the property. At the time of the attachment Wright did not claim the possession adversely to the plaintiff,

but consented that the plaintiff might attach the property, and post-poned two of his writs, to prefer the attachment of the plaintiff. If, then, the attachments were simultaneous, the plaintiff insists, that he had the same right to the possession that Wright had, and that Wright's possession was his possession. *Sigourney* v. *Eaton,* 14 Pick. 414. 19 Pick. 544.

The plaintiff insists, that the defendant had no right to take the property from his possession and sell it at private sale for the benefit of one creditor, to the exclusion of the first attaching creditor. Wright was bound to keep the property thirty days, that it might be charged in execution. Instead of doing this, he disposed of the whole property within fourteen days after the judgments were re-covered; and doing this, after the plaintiff had, with his consent, taken possession of the property, was a conversion.

The county court erred in admitting the return of Wright on Kittredge's execution as evidence of the facts therein stated. The sale, being by agreement of parties, was not an official act.

———— ———— for defendants.

That property in the hands of a sheriff may legally be sold, by the agreement of the debtor and creditor, has long been the set-tled law of the state. *Munger* v. *Fletcher,* 2 Vt. 524. If the re-turn upon the execution is not admissible evidence in a court of justice, it is nugatory for all purposes ;—but such, we apprehend, is not the law. If the sale was sufficient to transfer the property to the purchaser, of which there can be no doubt, the sale may be shown by *parol,* if the officer has made an insufficient return, or no return,— and if by parol, then certainly the return of the officer, under his official signature, should not be excluded. *Gates* v. *Gaines,* 10 Vt. 346.

It has been urged in this case, that one officer can attach property in the possession of another. Such practice we consider as tending to much confusion. Let the property be where it will, there is no constructive possession in any one but the attaching officer, while the lien created by the attachment is continued. *Watson* v. *Todd,* 5 Mass. 271. *Vinton* v. *Bradford,* 13 Mass. 114. *Tompson* v. *Marsh,* 14 Mass. 269. *Adams* v. *Abbot,* 2 Vt. 383. *Sawyer* v. *Middletown,* 10 Vt. 238. *Blake* v. *Shaw,* 7 Mass. 505.

Burroughs *v.* Wright et. al.

The bill of exceptions shows, that Wright consented that the plaintiff might take the property.  This implies no obligation upon Wright, until the plaintiff acted in pursuance of it; and Wright might withdraw the consent at any time before the sale of the property by the plaintiff.  Wright could make no agreement with the plaintiff, which would contravene his duty as a public officer, which would be binding upon him.  It was his duty to sell the property upon Kittredge's execution; and if he had suffered it to go into the plaintiff's possession, either by misapprehension of the law, or by fraudulent connivance, it was equally his duty to repossess himself of it.

The opinion of the court was delivered by

REDFIELD, J.   Many of the questions involved in this case were decided by this court on the former hearing.   16 Vt. 619.

1.  That no lien was created in favor of the Farmers' & Mechanics' Co. by the plaintiff's service of their writ, as stated in that case.  We do not think the difference in this case is important.   It is true, that Wright could not have served that writ; but the plaintiff might have served them all; and if it was the desire of all concerned to have that writ served prior to Kittredge's execution, they could have put the processes into the plaintiff's hands.   But the fact, that Wright could not serve this writ, is no reason why the court should attempt to create a lien, *without attachment.*  The same reason will apply in all cases, where the officer is the *sole party.*  But it will hardly be expected, in such cases, that a different rule is to apply.   Nor is the case different, as to the facts, in any other material point.

2.  It is of no consequence, so far as relates to the principle, whether Wright put *one* writ, or *three,* upon the property, before Burroughs was permitted to return his process.   The only question is, did he make the *first* attachment, and did he keep the *exclusive possession?*   These facts are expressly found by the jury.   That, then, will effectually exclude all attachments by the plaintiff;—for an attachment cannot exist, without custody, or possession, either by the officer, or by his servant.   Wright's agreement, that Burroughs' writ should stand in any given order of priority, can have no effect, so long as *no attachment* was in fact made.

3.  There is no pretence of a simultaneous attachment in this case,

if, indeed, any such thing can ever exist,—which I should somewhat question.

If, then, the plaintiff acquired no right to the possession of the property by the service of his writ in favor of the Farmers' & Mechanics' Co. against Ramsay, did he acquire any such right, when the executions upon the former attachments came into his hands? We think not.

It is not necessary to hold that the creditors in those executions lost their lien. Very likely they did not. It seems Wright so regarded it at the time; for he retained in his hands the amount of those executions,—which I do not see but Burroughs is still entitled to, if he properly charged the property in execution, as perhaps he did, by his demand of Wright. But clearly this gave the plaintiff no right to take the property out of Wright's hands, and thus defeat the lien upon Kittredge's execution. That lien could not be *transferred* to another officer, and, if the property were surrendered, would be gone, and Wright would thus become liable for the value of Kittredge's legal claim. The plaintiff, then, was clearly a trespasser in taking the property, unless Wright's consent, which was revoked *before it was acted upon,* created a right to possession in the plaintiff.

This consent was revocable, we think,—1, Because it was given without consideration, and the plaintiff made aware that it would be revoked before it was acted upon, and so the plaintiff was not misled or in any way injured by it. In short, being given without consideration, it would be revocable until acted upon; and if so revoked, as it was in this case, it would be, to all intents, the same as if it had never been given. 2. It was given by Wright under a *mistake* as to his own rights, and so clearly revocable, unless so acted upon as to place Burroughs in such a situation, that he would be injured, if the permission were revoked,—which was not the fact in this case.

Burroughs, then, at the time he took the property, having no *right* to the possession, but that being in Wright, *he* might well *retake* it; and his subsequent proceedings, if they had been irregular, would not have made him liable in trespass to the plaintiff, as long as he was not a trespasser in taking the property from the plaintiff, and the plaintiff was not the general owner and had *no* right to the

possession. If liable to any one, it would be to the debtor; but *he* having expressly waived all claim, and having consented to a sale without the requisite time of advertisement, the sale is binding upon him. The other creditors, if their lien was still kept good, have no reason to complain, so long as they might and may still, perhaps, have their money; and if they have lost this right, it is clearly by their own voluntary conduct, and not in consequence of any irregularity in this sale, or by being in any manner misled by that. We think the sale is therefore valid, and so far an official sale, that the return was *prima facie* evidence in favor of the officer and those who acted under him. It is not necessary to decide how far such a sale is to be treated as a sheriff's sale, *to all intents.* Perhaps, for some purposes, a sheriff's sale should be strictly *in invitum* in its full extent.

But, as the Farmers' and Mechanics' Co. had no lien, and the other liens have been satisfied,—or offered to be, which is the same thing,—and all the *other parties interested* have consented to the sale, we do not see what ground of objection there is left. This point was in effect decided in the former case reported.

Judgment affirmed.