TIMOTHY M. ADAMS AND OTHERS *v.* JOSIAH C. LANE, S. N.

HERRICK, *Trustee*, TUTE BRACKETT & Co., *Claimants.*

*Attachment.    Trustee Process.    Officer.*

Where an officer attached a store of goods as the property of the defendant, and pending the suit, by agreement of parties sold and delivered them, and subsequent to the sale, attached the same goods as the property of the said defendant, describing them in his return on the last writ in the same manner as in his return on the first, but subject to the previous attachment, it was *held* that the last attachment created no valid lien on the goods, because the officer had previously delivered the possession, and, by the sale, the title had passed from the defendant to the purchasers.

The parties to the first suit submitted the subject matter of the suit to arbitration, and an award was duly rendered, by which the suit was discontinued and the attachment dissolved; but the officer held the proceeds of the sale, deposited in the bank to his own account, and the same were attached as the property of the said defendant by the same officer and on the same writ as said goods were last attached, but subsequent to the award. *Held,* that the attachment created no valid lien thereon.

If the attachment had been made while the officer held the official charge and custody of the proceeds of the sale of the attached property under the former attachment, it would have been considered as creating an effectual lien on the proceeds.

When the first attachment was dissolved by the award, the officer had no longer any official charge or authority over the money received from the sale; but he became the debtor of the said defendant, and chargeable as trustee of the defendant for the amount of money so received.

TRUSTEE PROCESS. The question was as to the liability of the trustee. The trustee's disclosure and the facts in the case are suf-

ficiently stated in the opinion of the court. At the April Term, 1864, the court, BARRETT J. presiding, rendered judgment, *pro forma*, that the trustee be discharged with costs,—to which the defendant excepted.

*Field & Tyler*, for the plaintiffs.

We claim that the attachment of Tute Brackett & Co., was invalid and void. 1st. As to the goods. The provision of the statute is unmistakable. Comp. Stat. ch. 31, § 28. A valid attachment cannot exist without custody or possession, either by the officer or by his servant. *Lyon* v. *Rood*, 12 Vt. 233 ; *Burroughs* v. *Wright*, 19 Vt. 510. There was, then, no valid attachment of the goods, for it appears by the officer's return and trustee's disclosure that they had been sold and converted into money and gone out of the officer's possession and control, two months before the suit of Tute Brackett & Co., was in existence. After the sale of the goods, pursuant to the agreement of the parties, the officer was accountable for the proceeds of such sale ; and to hold that the goods could then be attached in his hands as Lane's property, would be in effect to hold him doubly accountable for the goods and for the proceeds of the sales.

2d. As to the money. The *identical money* received from the sales of the goods was not attachable, for the officer had commingled it with his own and made a general deposit of it in the bank. He had parted with the possession and control of it. The right to attach bank bills, etc., on *mesne* process does not exist at common law, but by construction of the statute only, and in order to create a valid attachment of them, they must be described so as to leave no question as to their identity. But even if the identical money had remained in the officer's hands. it was not attachable, for no property in that specific money vested in Lane, and his right against the officer was a *chose in action*. *Conant* v. *Bicknell*, 1 D. Chip. 50 ; *Prentiss* v. *Bliss*, 4 Vt. 513 ; *Hulburt* v. *Hicks & Tr.*, 17 Vt. 193 ; *Dubois* v. *Dubois*, 6 Cowen, 497 ; *Maxwell* v. *McGee*, 12 Cush. 137 ; *Thompson* v. *Brown*, 17 Pick. 462 ; Drake on Attach't § 251.

But the officer does not certify in his return on the writ of Tute Brackett & Co., that he attached the identical money, but that, by direction of their attorney, he attached *the proceeds of the sales.* The arbitration and award discontinued the suit of Adams and others against Lane, and dissolved the lien created by their attachment,

and thereupon the officer became merely Lane's debtor; not for the *identical money* received from the proceeds of the sales of the goods, but for the *amount.* The fallacy of an assumption that these proceeds of sales could be attached in the hands of the officer, will be manifest by enquiring if Lane could have maintained trover against the officer for them.

II. We claim that these funds in the hands of the officer may be held by trustee process, and that the trustee is chargeable. A deputy sheriff, who has collected the amount due upon an execution, may be held as trustee of the execution creditor for the amount so collected. *Hulburt* v. *Hicks et al. & Tr.,* 17 Vt. 193; *Bullard* v. *Hicks et al. & Tr.,* 17 Vt. 198; *Lovejoy et al* v. *Lee & Tr.,* 35 Vt. 430.

*Charles N. Davenport,* for the claimants.

The important question in this case is: Did the claimants obtain any lien upon the goods sold or their proceeds by their attachment? We insist they did. 1st. By the attachment of the goods "*eo nomine.*" But it will be said, "there were no goods then to attach; they had been sold, and so scattered among different purchasers that an attachment was impossible." This is a difficulty more fanciful than real. It is obviated by treating the proceeds while they remain in the officer's hands, as the goods themselves. 2d. By the officer's "attaching and retaining upon the writs the amount of money made by the sale of the goods." The goods when attached passed into the custody of the law. When sold the proceeds remained in the same custody. The *form* of the security was changed, but the lien was not affected. The sale did not make the proceeds Herrick's. Upon his death those proceeds would not pass to his administrator; nor upon bankruptcy to his assignee. *Wilder* v. *Bailey,* 3 Mass. 289; *Brandon Iron Co.* v. *Gleason,* 24 Vt. 228. But it is claimed "that the *money had lost its identity* by having been mingled with other monies of the trustee," and therefore could not be attached. Admitting the premises we deny the conclusion.

It is no objection to our attachment, that the officer could not describe the coin or bank bills, which constituted "the proceeds of the sale, in his return with the same precision requisite in an indictment for forgery. Suppose an officer returns on a writ—"I attached $1000. in current money of the United States," or "I attached

Adams et al *v.* Lane & Tr. and Cl.

$1000. in current bank bills." Would not that be a sufficient discription? *Fullam et al.* v. *Stearns*, 30 Vt. 444; *Bucklin* v. *Crampton*, 20 Vt. 261. In Massachusetts, when property has been attached and sold on *mesne* process, in the manner provided by the statute, the proceeds while in the officer's custody are liable to be further attached by him on other writs. Colby's Practice, 117; G. S. of Mass. 628, § 72; 624 § 34.

This case was argued at February Term, 1865, before POLAND, Ch. J., and PIERPOINT, KELLOGG and PECK, JJ., and judgment entered at February Term, 1866, the opinion being drawn up by

KELLOGG, J. The facts upon which the question as to the liability of Herrick as trustee in this case arises are in substance as follows: On the 1st of December, 1862, Herrick, as an indifferent person duly authorized, attached on a writ in his hands in favor of the plaintiffs against the principal defendant, returnable to the Windham county court, at the April Term, 1863, all the goods in a store at Marlborough, then occupied by the principal defendant, and, by the consent in writing of the parties in that writ, he sold at auction on the 20th of January, 1863, and at private sale after the making of the attachment and previous to that date, a portion of these goods, and received in money on account of these sales the sum of $1177.00 in the whole. At the auction sale, the principal defendant bid off goods amounting to about $120.00, but, as he neglected to pay for the goods which he bid off, the attaching officer retained these goods " as collateral security for the bids." The money received from the sales of the goods was received in various sums and at different times, as the sales were made, and, as it was received from time to time, it was deposited by the attaching officer, with other money of his, to the credit of his private account in the Windham County Bank, at Brattleboro; and it remained on deposit to his credit in that bank, "mingled with his other money on deposit there," when the plaintiffs' writ in this action was served upon him. The plaintiffs' suit in which the attachment of goods was made was pending on the 21st of March, 1863, and was the subject matter of an award of arbitrators, appointed by the parties, which was made and published on that day, and it is agreed that this award operated as a discontinuance of that suit. On the 25th of March, 1863, the plain-

tiffs commenced this suit, which is an action of *assumpsit* against the principal defendant on the award, with a trustee process against Herrick as the trustee of the principal defendant, and the writ in this suit was served upon Herrick as trustee on the same day; and the plaintiffs' claim to hold him chargeable in this suit as the trustee of the principal defendant for the money received by him as the proceeds or produce of the sales of the attached goods. On the 20th of March, 1863, Herrick being then a deputy sheriff, made service of a writ in favor of Tyler & Thompson against the principal defendant "by attaching the same property" which he had previously attached on the plaintiffs' writ, in their first suit against the principal defendant, but subject to the plaintiffs' attachment in that suit; and, on the 21st of March, 1863, he made service of a writ in favor of Frost & Goodhue, and also a writ in favor of Tute Brackett & Co., the claimants in this case, both against the principal defendant, by attaching "all the property which he had previously attached" on the writs in favor of the plaintiffs and of Tyler & Thompson, describing the same in his returns of service in the same manner as in his return on the plaintiffs' first writ, but subject to the previous attachment thereon; and, on the 23d of March, 1863, he made further service of the writ in favor of the claimants, by the direction of their attorney, "by attaching and returning upon said writ the amount of the money made by the sale of the goods as hereinbefore set forth, which was then on deposit to the trustee's credit in the Windham County Bank, mingled with other moneys of his on deposit in said bank:" and, on the same day, he made service of a writ in favor of Albert Stratton against the principal defendant, "by attaching all the property previously attached," as above stated, "and the amount of money made from the sale of the goods as hereinbefore stated, subject to all the foregoing previous attachments." All of these attachments, except the one made on the writ of the plaintiffs in their first suit, were made by Herrick as deputy sheriff; and the liens created by the attachments on the writs in favor of the claimants and Stratton have been preserved and remain in full force, if any such liens in fact ever existed.

There can be no doubt that the attachments made on the writs in favor of Tyler & Thompson, Frost & Goodhue, Tute Brackett &

Co., the claimants, and Stratton created valid liens on the. goods which were bid off by the principal defendant and retained in the hands of Herrick as security for the bids, and also on that part of the goods attached on the writ in the plaintiffs' first suit which remained unsold in Herrick's hands at the time when these subsequent attachments were made,—the title of the principal defendant to these goods, at the time when the subsequent attachments were made, being in any point of view unquestioned.

The principal question in the case is whether the attachment of the claimants was effectual to create a lien on the particular goods which were attached and sold by Herrick as the attaching officer on the plaintiffs' writ in their first suit, or upon the proceeds of his sales of those goods. The attachment of the goods, *eo nomine*, made on the writ in favor of the claimants, was made on the 21st of March, 1863, and on the same day, the plaintiffs' first suit was discontinued. The attachment of " the amount of the money made by the sales of the goods which was then on deposit to the credit of Herrick's account in the Windham County Bank, mingled with his other money then on deposit in that bank," made on the writ in favor of the claimants, was made on the 23d of March, 1863—two days afterwards. Although no overt act by the attaching officer is necessary to constitute an attachment of property previously in his custody. ( *Turner* v. *Austin,* 16 Mass. 181,) yet an effectual attachment of goods cannot exist without custody or possession either by the officer or his servant. *Lyon* v. *Rood,* 12 Vt. 233 ; *Burroughs* v. *Wright et al.,* 16 Vt. 619 ; S. C., 19 Vt. 510. There was no effectual attachment of these goods on the claimants' writ, because they had been sold and converted into money, and had passed out of the officer's possession and control more than two months before the claimants' writ was issued, and, by the sale, the title of the principal defendant to the goods was transferred to the purchasers, and the officer thereby became accountable not for the goods, but for the proceeds of the sales. The officer having sold the goods on the plaintiffs' writ in their first suit, and received the proceeds of the sales, was required by the statute ( Comp. Stat. p. 246, § 28 ; G. S. p. 295, § 40.) to hold these proceeds " subject to all the attachments and executions in his hands, at the time of the sale, against the owner of the prop-

erty." If it was necessary in this case to decide the question whether an attaching officer could make an effectual attachment of money which was the proceeds of property sold by him on a prior attachment, we should be inclined to regard such money as subject to attachment and levy so long as it remained in the official possession and custody of the officer, and was potentially under his control. In such a case, the identity of the money with the specific money received on the sales should be presumed to have been preserved, so as to be capable of being ascertained; and we think that the money itself should be treated as taking the place of the goods, and as being so far the property of the debtor as to make it, while in the official custody of the officer, subject to attachment and levy, the same as the goods would have been if they had not been sold, even though it could not be regarded as the specific property of the debtor for any other purpose. It is quite clear from the adjudged cases that the attaching creditor would have no right to pursue the specific pieces of money received by the officer on the sales, although they should have an ear-mark so as to be capable of being precisely identified. *Turner* v. *Fendall*, 1 Cranch, 117; *Dubois* v. *Dubois*, 6 Cowen, 497; *Thompson* v. *Brown*, 17 Pick. 462; *Maxwell* v. *McGee*, 12 Cush. 137; *Conant* v. *Bicknell*, 1 D. Chip. 50; *Prentiss* v. *Bliss*, 4 Vt. 513. In *Hulburt* v. *Hicks et al., and Trustees*, 17 Vt. 193, it was held that a deputy sheriff who received an execution for collection, and during its life, collected the money due upon it, was chargeable as the trustee of the execution creditor for the amount so collected, if he had it in his hands at the time of the service of the trustee process upon him; and that his liability was not affected by the fact that the execution creditor never demanded of him payment of such money. That case proceeds on the ground that the officer is a debtor to the execution creditor for the money; and this implies that the specific money for which he is thus held as a debtor is not in itself attachable as the property of the execution creditor.

The identity of the specific money which was received from the sales of the goods in this case, was in fact lost when the attaching officer mingled the money with his own, and deposited it to his credit in the bank. This deposit, as we understand from the disclosure of the trustee, was a general and not a special deposit, and, by making

it in this way, and thus mingling the money with his own, the officer became accountable for it in the same way in which he would have become accountable if he had appropriated the money to his own use in any other manner. The money while in the bank stood at his risk, and not at the risk either of the debtor or the attaching creditor. In selling the attached property, the officer was the agent of both parties,—the sale being made by the agreement of the parties. When the plaintiffs' first suit was discontinued, the attachment made on the writ in that suit was thereby dissolved, and the attaching officer's duty to the plaintiffs, as attaching creditors, was 'at an end. The proceeds of the sales of the attached property being then subject to no other attachment, his only remaining duty in respect to those proceeds was to pay over the amount of the same to the principal defendant. Neither the goods nor the proceeds of the sales could be treated as being any longer in his official charge or custody; and his duty to pay over to the principal defendant the proceeds of the sales cannot be distinguished from his duty to pay over any other money belonging to the principal defendant, which might then have been in his hands. The right of the principal defendant against him then became a mere chose in action; and he became the debtor of the principal defendant for the money received by him as the proceeds of the sales. This was simply a debt due from him to the principal defendant; and a mere right to a sum of money in the hands of an attaching officer cannot be attached or levied upon any more than it could if it was a right to a sum of money in the hands of any other person. Such a right or debt cannot be reached in any other way than by trustee process. We think it would not be claimed that the principal defendant could, on the dissolution of the attachment under which the attaching officer held the proceeds of the sales of the attached property, have maintained either trover or detinue against the officer for these proceeds, for his right is not a right to any specific money, but only a right to a specific sum of money, in the officer's hands. If the attachments made by the claimants had been made while the attaching officer held the official charge and custody of the proceeds of the sales of the attached property under the plaintiffs' first attachment, we should have considered it as creating an effectual lien upon those proceeds; but we think that no

lien upon the proceeds of the sales could be created by a subsequent attachment unless the subsequent attachment was made while the first attachment was subsisting. When the first attachment was dissolved, the officer had no longer any official charge, custody, or authority over the money received from the sales, and there was then nothing left for him to do but to pay that money to the principal defendant. This duty or debt of the officer to the principal defendant then became subject to a trustee process, and the proceeds of the sales of the goods could not then be reached or secured in the officer's hands, on process against the principal defendant in any other way.

It has been decided in this court that a deputy sheriff who has money in his hands which he has collected on an execution may be held as the trustee of the execution creditor. *Hurlburt* v. *Hicks et al.,* *and Trustees, ubi supra* ; *Bullard* v. *Hicks et al., and Trustees,* 17 Vt. 198. It has also been decided that he may be held as a trustee of a debtor for coin, bank bills, or money which have been attached on *mesne* process and remain in his hands after the settlement of the suit. *Lovejoy et al.* v. *Lee and Trustee,* 35 Vt. 430. In this last case, it was said by PECK, J., that " on the same principle, such officer must be liable as trustee of the execution debtor for a surplus in his hands belonging to such debtor, realized on the sale of the property of such debtor, and which it is his duty to pay over to the debtor." That principle is applicable to this case. When the attachment in the plaintiffs' first suit was dissolved, the attaching officer became the debtor of the principal defendant for the amount of the proceeds of the sales of the attached property in his hands ; and as the attempted attachment of these proceeds on the writ in favor of the claimants against the principal defendant was made after the attachment in the plaintiffs' first suit was dissolved, it created no effectual lien on those proceeds. The plaintiffs are consequently entitled to hold the attaching officer chargeable as the trustee of the principal defendant for the amount of those proceeds which it became the duty of the officer to pay over to the principal defendant when the attachment in the plaintiffs' first suit was dissolved.

The judgment of the county court, which was, *pro forma,* that the trustee be discharged with costs, is reversed, and judgment is ren-

dered that. the. trustee is chargeable as the trustee of the principal defendant for the amount, of the proceeds of the sales of the attached property received· by the trustee as stated in his disclosure, and. that the claimants have no lawful claim to those.proceeds, or.any part thereof, and that, as against the claimants, the plaintiffs shall recover their costs arising from the prosecution by the claimants of their claim. The judgment of the county court in favor of the plaintiffs against the principal defendant is affirmed without additional costs.